IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOHN YANCEY SCHMITT,

    Petitioner,

v.                                      Civil Action No. 3:02cv953

WILLIAM PAGE TRUE, Warden,
Sussex I State Prison,

    Respondent.

**MEMORANDUM OPINION**

Pursuant to 28 U.S.C. § 2254, John Yancey Schmitt, a Virginia state prisoner who has been sentenced to death, filed a petition for a writ of habeas corpus challenging his conviction in the Circuit Court for the County of Chesterfield for the capital murder of Shelton Dunning and the ensuing death sentence. In a Memorandum Opinion (Docket No. 80) issued on January 21, 2005, all of Schmitt's claims for habeas relief were rejected except for the following claims:

XIV.    Trial counsel was ineffective when he failed to object in a timely manner to the admission of the Sauer/Schmitt tape recorded jailhouse phone call.

XV.    Defense counsel was ineffective when he failed to move for a mistrial based on prosecutorial misconduct at the proper time.

XVI.    Defense counsel's performance was prejudicial.

XX.    The admission of the taped jailhouse phone call between Schmitt and Sauer, acting as a government agent, during the penalty phase violated Schmitt's Fifth and Sixth Amendment rights.

XXI.    Prosecutorial misconduct during the penalty summation deprived Schmitt of due process and a fair trial and the

>> trial court erred when denying curative instructions and a mistrial.

Additionally, Schmitt's March 3, 2004 motion to amend his petition to include the following Claim remained outstanding:

XXIV. The prosecutor withheld impeachment materials in violation of Brady v. Maryland, and Schmitt's rights to due process of law under the Fifth and Fourteenth Amendments.

After discovery, an evidentiary hearing was held on Claims XIV and XX. By a separate Memorandum Opinion and Order entered this day, Schmitt's motion to amend his petition to add Claim XXIV is denied and Claims XIV and XX are dismissed.[1] For the reasons stated below, Schmitt is not entitled to relief on Claims XV, XVI, XXI, and XXIV.

## I. CLAIM XV: COUNSELS' FAILURE TO MOVE FOR A MISTRIAL BASED ON PROSECUTORIAL MISCONDUCT AT THE PROPER TIME

Schmitt contends that the prosecutor made numerous improper comments during closing argument. The comments at issue were addressed to: (1) Schmitt's use of a stolen handgun, notwithstanding that the Commonwealth earlier had stipulated that the handgun was not stolen; (2) the reference to a stolen shotgun; (3) a prior "shotgun assault" by Schmitt on his girlfriend; (4) the so-called "wonderful life" in that prison Schmitt would have were

---

[1] The facts pertaining to Schmitt's sentence and procedural framework governing the present review are set forth fully in the contemporaneously issued Memorandum Opinion and in the Memorandum Opinion entered January 21, 2005. Thus, it not necessary to be repeat that information in the immediate Memorandum Opinion.

he sentenced to life imprisonment; and (5) the argument that the jury "should not trust the system that can so easily be manipulated by the defendant." On direct appeal, the Supreme Court of Virginia concluded that the trial court's curative instructions were sufficient to eliminate any prejudice flowing from the first comment (i.e., the stolen handgun) and that Schmitt had defaulted any claim of error pertaining to last four comments. Specifically, the Supreme Court of Virginia concluded that counsel's objections to the second, third and fourth comments were inadequate to have preserved the issue for appellate review because counsel's contemporaneous objections were not coupled with a request for a curative instruction or a mistrial as required by Virginia law and because Schmitt had made no contemporaneous objection at all with respect to the fifth comment. Schmitt v. Commonwealth, 547 S.E.2d 186, 200-1 (Va. 2001).

In his federal petition, in Claim XXI, Schmitt reasserted that all five of these comments constituted prosecutorial misconduct. As explained in the Memorandum Opinion issued January 21, 2005, Claim XXI is procedurally defaulted and barred from review here absent a showing of cause and prejudice or a fundamental miscarriage of justice. See Memorandum Opinion entered Jan. 21, 2005 at 11. Schmitt contends that the ineffective assistance of counsel set forth in Claim XV serves as cause to excuse his default.

3

In Claim XV, Schmitt contends that the failure of counsel to move for a mistrial at the proper time with respect to the last four comments listed above denied him the effective assistance of counsel. As discussed below, this claim of ineffective assistance of counsel fails because of the four categories of purportedly improper comments, only the prosecutor's reference to the shot gun assault was clearly inappropriate and, although the reference to the shot gun assault was inappropriate, there is no reasonable probability that Schmitt would have been granted relief had counsel properly preserved his objection to that comment.

### A. Closing Argument by the Defense

It is well-settled that, when the defense makes comments in closing that invite the government to respond, the prosecution, in rebuttal, may enter into areas which otherwise would constitute improper argument. United States v. McNatt, 931 F.2d 251, 258 (4th Cir. 1991) (concluding the prosecution was entitled to respond to the defendant's argument that the police officer had planted the drugs); United States v. Harrison, 716 F.2d 1050, 1052-53 (4th Cir. 1983). Therefore, before addressing the prosecutor's purportedly improper comments in rebuttal, it is necessary briefly to recount the defense's closing argument.

Defense counsel's closing was laden with emotional and moral overtones. For example, the defense asked "[i]f the taking of human life is profoundly wrong, then why is not this proceeding to

take a human life equally wrong." JA at 1564. The defense repeatedly alleged that the prosecution'sسنتencing case was based in retribution and vengeance rather than the higher ideals of humanity. See e.g. JA 1563-65. The defense argued that there was no need to "kill" Schmitt because the future dangerousness aggravator was rendered moot by Schmitt's imprisonment. JA at 1565. Counsel explained that, because Schmitt would be imprisoned for the rest of his life, "[h]e will not be in society. He will be as a matter of law, no matter what else is decided today, removed from society for the rest of his natural life. So there is no probability or even a possibility that he will be a continuing serious threat to our society." JA at 1566.

### B. The Absence of a Contemporaneous Objection to the Prosecutor's "Do not Trust the System Argument" Does Not Demonstrate Ineffective Assistance of Counsel

In response to the defense argument, the prosecutor, on rebuttal, asked the jury to remember how Schmitt had acted previously while under the supervision of the criminal justice system. Specifically, he reminded the jury of the evidence that, while Schmitt was on probation, he had been using drugs, selling drugs, illegally possessing weapons, had twice robbed a bank, and had murdered Shelton Dunning. The prosecutor then noted that the probation departments were part of the same system that was

5

supposed to protect society from Schmitt.[2] "This is same system that [defense counsel] is trying to convince you is going to keep him from hurting somebody in the penitentiary or from ever getting out. <u>He plays the system like a fiddle.</u>" JA at 1586 (emphasis added). To make this point, the prosecutor further reminded the jury that, after the first bank robbery (nd while a warrant was outstanding charging that Schmitt had absconded from probation) Schmitt was arrested by the Henrico police department for obstructing justice and was placed in jail. Schmitt realized that he was in great jeopardy, and, therefore, he gave the police a false name and quickly had his friends bail him out of jail. The prosecutor then concluded that:

> <u>I would urge you not to trust the system that can be so easily manipulated by the defendant</u>, but [defense counsel] says don't worry about that. He's going to be locked up for the rest of his life, and you look at me and say isn't that right Mr. Commonwealth. I'm going to tell you something. There's not a person on this planet that can predict the future.

JA at 1586-87 (emphasis added).

Although perhaps overzealous, the underscored text was a permissible response to the defense argument that Schmitt could not possibly pose a future danger to society because he would be in

---

[2] "Defense counsel] is telling you, look, we put him in the Department of Corrections, and everything is going to be fine. He won't be able to hurt anybody in there. He won't be able to get out. Everything is fine. What you saw was an example of what [defense counsel] asks you to trust." JA at 1584.

6

prison. See Mahaffey v. Page, 151 F.3d 671, 681 (7th Cir. 1998) (noting prosecution could suggest that, in light of defendant's prior escape, there was not a guarantee he would remain in prison). "The possibilities of escape or some other form of release from prison are legitimate concerns in determining the future dangerousness of a defendant." Gribble v. Johnson, 8 F.Supp.2d 942, 953 (S.D. Tex. 1998). Moreover, "the question we have to ask is not whether the prosecutor's comments were proper, but whether they were so improper that counsel's only defensible choice was to interrupt those comments with an objection." Bussard v. Lockhart, 32 F.3d 322, 324 (8th Cir. 1994); see United States v. Young, 470 U.S. 1, 13 (1985). Here, the answer to that question is no. Counsel's failure to object to the foregoing argument was not deficient.

**C. Counsel Was Not Deficient for Failing to Make a Contemporaneous Motion for a Mistrial Based on the Prosecutor's Comments About the Conditions of Schmitt's Incarceration**

Schmitt contends that the prosecutor engaged in misconduct when he described the life that Schmitt would lead in prison. At trial, the prosecutor stated:

> If you give him life, the defendant gets up every morning and Bettye Atkins wakes up and gets out of bed and looks for a reason to live. Something she has trouble with now, a reason to live. If you give him life, while he is playing ping pong . . . .

7

JA at 1587. At this point, the defense objected to the prosecutor trying to paint a picture of Schmitt's future confinement, when the trial court had prohibited the defense from putting on evidence of that confinement. JA at 1587-88. The trial court did not sustain the objection, but instead merely instructed the jury that what the prosecutor said was not evidence. However, when he resumed his rebuttal, the prosecutor did not attempt to describe Schmitt's future confinement in the penitentiary. Rather, the prosecutor limited his discussion to reminding the jury of Schmitt's description on the Sauer tape of his confinement in the local jail while awaiting trial. See JA at 1391.

> You recall the defendant's statements in here about ping pong and 48 cable channels. While he is doing that, Sandra Hurt is still remembering what Mr Dunning looked like, that last look he gave her, or maybe she's hearing the death rattle. As he's using his canteen privileges, Marlene Austin is still dealing with the fact that it was Shelton Dunning who put himself between them and Yancey Schmitt. As he is getting visits from his family, Orlando Dunning is sitting watching his mother clean Shelton Dunning's grave off with a toothbrush. This is about justice. It has nothing to do with vengeance or revenge. I would no more be part of that.

JA at 1588. Counsel did not object to this line of argument.

Schmitt contends that counsel was deficient for failing to make a contemporaneous motion for a mistrial after the prosecutor's comments about the conditions of his pretrial confinement. Schmitt's critique of counsel's conduct fails to acknowledge the

8

shift in the prosecutor's argument after counsel's objection. Although the prosecutor initially began to describe Schmitt's future confinement, once the defense objected, the prosecutor properly limited his comments to repeating how Schmitt had described his pretrial incarceration in his taped conversation with Sauer. Counsel reasonably refrained from objecting to the latter argument because it simply reminded the jury of evidence presented during trial. Bates v. Lee, 308 F.3d 411, 422 (4th Cir. 2002). Nor can it be said that the failure of counsel to couple his objection to the former argument with a motion for a mistrial is sufficient to overcome "the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. 668, 689 (1984). Counsel reasonably refrained from moving for a mistrial because his objection had resulted in an admonition from the trial court that stemmed the initial improper argument pursued by the prosecutor.

    **D. Adequacy of Counsel's Response to the Prosecutor's Argument that Schmitt Had Stolen Lockner's Shotgun and Assaulted Danielle Kelsor**

Schmitt contends that the prosecutor engaged in misconduct when he stated that Schmitt, "chose to illegally possess and carry weapons, **to steal Kenny Lockner's shotgun, to assault Danielle Kelsor with a shotgun.**" JA at 1578. Immediately after those comments, the defense objected and the trial court instructed the jury that, "[a]gain I inform you this jury that what Mr. Von Schuch

9

says is not evidence, and they shouldn't consider it." JA at 1578. Schmitt contends that the comments were improper and that counsel should have moved for a mistrial because there was no evidence that the shotgun was stolen and no evidence that Schmitt had assaulted Kelsor with a shotgun. Schmitt is correct about the comment respecting an assault on Kelsor, but he is incorrect about the reference to the shotgun had been stolen. See Bell v. Evatt, 72 F.3d 421, 437 (4th Cir. 1995) (concluding that remarks that "were consistent with the record and . . . rationally inferred from the ... evidence" were not improper).

### 1. The Prosecutor's Reference to Schmitt's Purported Assault Upon Danielle Kelsor was Improper

Schmitt had robbed the Nationsbank twice, once on January 19, 1999 and again on February 17, 1999. During the first robbery Schmitt used a shotgun taken from Kenny Lockner. During the second robbery, Schmitt used a handgun.[3] Contrary to Schmitt's complaint here, it was permissible for the prosecutor to have argued that Schmitt had stolen Lockner's shotgun that was used in the first robbery. Lockner testified that Schmitt stayed with him from the

---

[3] During closing argument, the prosecution erroneously stated that the evidence reflected that the handgun had been stolen. Counsel objected, the prosecution acknowledged its mistake, and the trial court subsequently reminded the jury that there was no evidence that the handgun had been stolen. As noted previously, Schmitt's challenge to the prosecutor's arguments pertaining to the handgun were raised by counsel and rejected on the merits by the Supreme Court of Virginia. See Schmitt v. Commonwealth, 547 S.E.2d 186, 200 (Va. 2001).

10

end of 1998 through January of 1999. JA at 1251. Lockner testified that he kept a shotgun in his house. JA at 1253. Schmitt used that shotgun to commit the first bank robbery. Before the bank robbery, Schmitt had not asked Lockner for permission to use the shotgun. JA at 1254. Lockner was not aware that Schmitt had taken the shotgun and shortened the barrel, until the police came looking for the gun after the first robbery. JA at 1253-54. In light of that testimony, it was appropriate to argue that Schmitt had stolen Lockner's shotgun and the lack of a contemporaneous request for a mistrial with respect that the comment was not deficient. <u>Bell</u>, 72 F.3d at 437.

However, the prosecutor clearly overstepped the bounds of fair comment when he argued that Schmitt had assaulted Danielle Kelsor with the shotgun. At trial, Lockner had testified that Schmitt and Kelsor frequently argued. Although the prosecutor had attempted to elicit information from Lockner about an argument where Schmitt had threatened Kelsor with a shotgun, the prosecutor did not succeed in doing so.

>    PROSECUTOR:   Did you ever see an incident between Danielle and Yancey Schmitt about the - - that involved the use of that shotgun?
>
>    LOCKNER:      I heard her. Like I said, I was asleep at night. Like I said, Yancey, he told her even about 6:00 that he didn't want her to come up there because they was arguing. Danielle showed up about 9:00, 10:00 at night, and they went in there, and they was in the room to their self. Just like, I don't know, 12:00 at night

> she got to hollering and come running out there and woke us up. That's when she told me - -

JA at 1252-53. At this point, Lockner was interrupted by an objection. Questioning resumed, and Lockner explained that the police responded to the argument and asked to see the shotgun. JA at 1253.

The prosecutor's comment that Schmitt threatened Kelsor was not, on this record, fair comment on the evidence. See United States v. Wilson, 135 F.3d 291, 298 (4th Cir. 1997).[4] Counsel properly objected to that comment, and the trial court responded by instructing the jury that what the prosecutor said was not evidence. Schmitt insists that such a response was insufficient and that constitutionally reasonable counsel would not only have objected, but also would have moved immediately for a mistrial. Counsel is under no constitutional obligation to pursue futile motions. Vieux v. Pepe, 184 F.3d 59, 65 (1st Cir. 1999); see Oken v. Corcoran, 220 F.3d 259, 269-70 (4th Cir. 2000); United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995). As discussed below, it was apparent the motion for a mistrial would not succeed.

---

[4] This kind of overzealous argument reflects a lack of understanding of the prosecutor's proper role. See Berger v. United States, 295 U.S. 78, 88 (1935). Clearly, the prosecutor represents the state (and that includes the victim), but the interest of neither the state nor the victim is served by overzealous argument that could jeopardize a conviction or that injects unfair comment into a case. Nor is it consistent with the prosecutor's duty to the public to assure a fair trial.

Therefore, counsel's failure to immediately follow up his objection with a futile motion for a mistrial was not deficient.

### 2. Schmitt Was Not Prejudiced by Counsel's Failure to Couple the Objection to the Assault Upon Kelsor With a Motion for a Mistrial

A defendant is not entitled to habeas relief because of improper comments by the prosecution unless he demonstrates that the comments "prejudicially affected the defendant's substantial rights so as to deprive [him] of a fair trial." United States v. Adam, 70 F.3d 776, 780 (4th Cir. 1995) (quoting United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993)). The following factors are relevant to that inquiry:

> (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters . . . .(5) whether the prosecutor's remarks were invited by improper conduct of defense counsel . . . , and (6) whether curative instructions were given to the jury.

See United States v. Wilson, 135 F.3d 291, 299 (4th Cir. 1998) (internal quotations and citations omitted). "These factors are examined in the context of the entire trial, and no one factor is dispositive." Id.

The remarks about the Kelsor assault and the brief reference to the stolen handgun were hardly the linchpin of the prosecution's

case at sentencing. Here, the case for a sentence of death was grounded in Schmitt's lawless lifestyle, the cold deliberate manner in which he had carried out the murder of Shelton Dunning, and Schmitt's lack of remorse for that crime. Nor does it appear that the remarks were placed before the jury to divert their attention to extraneous matters and to mislead the jury. See e.g., Wilson, 135 F.3d at 298-99. Additionally, each of the purportedly improper remarks was followed by a curative instruction from the court. See Bennet v. Angelone, 92 F.3d 1336, 1346-7 (4th Cir. 1996); United States v. Francisco, 35 F.3d 116, 120 (4th Cir. 1994). Having considered the applicable Wilson factors, there is no reasonable probability that Schmitt would have been granted relief if counsel had coupled his objection to the Kelsor assault with a motion for a mistrial. Therefore, Claim XV will be dismissed. Furthermore, because Schmitt has failed to demonstrate cause and prejudice to excuse his default, Claim XXI will be dismissed.

**II. CUMULATIVE IMPACT OF COUNSELS' ERRORS**

Schmitt contends that, when the errors of counsel are considered cumulatively, he was denied the effective assistance of counsel. The cumulative analysis that Schmitt advances is not permitted here because, with the exception of that portion of Claim XV discussed above, the Court has rejected Schmitt's assertion that counsel performed deficiently. Fisher v. Angelone, 163 F.3d 835, 852-3 (4th Cir. 1998). "Attorney acts or omissions 'that are not

14

unconstitutional individually cannot be added together to create a constitutional violation.'" Id. (quoting Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996)). Accordingly, Claim XVI will be dismissed.

### III. CONCLUSION

For the foregoing reasons, Claims XV and XVI will be dismissed for lack of merit. Schmitt has failed to demonstrate cause or actual innocence to excuse his default. Therefore, Claim XXI will be dismissed as defaulted. The petition for a writ of habeas corpus will be denied and the action will be dismissed.

The Clerk is directed to send a copy of the Memorandum Opinion to counsel of record.

It is so ORDERED.

/s/
Robert E. Payne
United States District Judge

Richmond, Virginia
Date: 09/14/05

15